UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUSSELL ANDERS,<br><br>Defendant. | CASE NO. 2:23-cr-00046-TL<br><br>ORDER ON MOTION TO<br>REVOKE DETENTION ORDER |

This matter comes before the Court on Mr. Anders's Motion to Revoke the Detention Order (Dkt. No. 19) ("Motion to Revoke"), appealing the April 4, 2023, detention order (Dkt. No. 15). Having conducted a *de novo* review and considered: (1) the Indictment (Dkt. No. 1); (2) the original Pretrial Report (Dkt. No. 7) and four Supplemental Pretrial Reports (Dkt. Nos. 12, 24, 27, 30); (3) the Government's motion for detention (Dkt. No. 10); (4) the audio recording of the April 4 detention hearing (Dkt. No. 20); (5) the Government's response to the Motion to Revoke (Dkt. No. 21); (6) the Parties' representations at oral argument (Dkt. No. 28);

1   (7) the Parties' supplemental briefing (Dkt. Nos. 29, 31); and (8) the relevant record, the Court

2   GRANTS the Motion to Revoke and RELEASES Mr. Anders with conditions.

3   **I.    BACKGROUND**

4        Mr. Anders faces two charges related to the production and possession of sexually

5   explicit content involving children. On March 29, 2023, a grand jury indicted Mr. Anders on one

6   count of Production of Child Pornography, 18 U.S.C. §§ 2251(a) and 2251(e), and one count of

7   Possession of Depictions of Minors Engaged in Sexually Explicit Content, 18 U.S.C.

8   §§ 2252(a)(4)(B) and 2252(b)(2). *See* Dkt. No. 1. Upon his counsel learning of the indictment,

9   Mr. Anders arranged to surrender himself on March 31, which he did. Dkt. No. 19 at 3. The

10   Government moved for detention, arguing that Mr. Anders should be detained to ensure the

11   safety of any other person and the community. Dkt. No. 10 at 1–2; *see* 18 U.S.C. § 3142(f)(1)(A)

12   (authorizing a detention hearing "in a case that involves . . . a crime of violence").

13        Prior to the detention hearing, Pretrial Services filed two reports. Dkt. Nos. 7, 12. In its

14   original report, Pretrial Services recommended that Mr. Anders be released under a variety of

15   conditions. Dkt. No. 7 at 7–8. In its first supplemental report, however, Pretrial explored the

16   suitability of Mr. Anders's current address and three proposed alternative addresses as locations

17   where Mr. Anders could reside pending trial. Dkt. No. 12 at 2–5. Finding no address suitable,

18   Pretrial Services recommended that Mr. Anders be detained. *Id*. at 6–7. At the April 4 detention

19   hearing, the magistrate judge ruled that Mr. Anders be detained on the basis of both

20   nonappearance and safety concerns. Dkt. No. 15 at 2.

21        Following the detention hearing, Mr. Anders filed the instant Motion to Revoke, which

22   the Government opposes. Dkt. Nos. 19, 21; *see* 18 U.S.C. § 3145(b). In response to the Parties'

23   briefing, the Court directed Pretrial Services to conduct a supplemental investigation to aid the

24   Court in its review of the motion. Dkt. No. 22. The Court sought additional information

regarding the suitability of Mr. Anders's mother's home as a residence and allegations by the Government that Mr. Anders had included "inaccuracies and misleading statements" in his motion. *Id*.; Dkt. No. 21 at 7. Pretrial Services filed the results of that investigation as a Second Supplemental Report in which it maintained its recommendation of detention. Dkt. No. 24 at 8.

On June 7, the Court held a hearing on the Motion to Revoke. Dkt. No. 28. Prior to the hearing, Pretrial Services filed a Third Supplemental Report in which it changed its recommendation back to release with conditions. Dkt. No. 27 at 5–6. The impetus for the change appears to be that Mr. Anders was accepted to reside at House of Mercy, a supportive housing program in Spokane, Washington. *Id*. at 2; *see also* Dkt. No. 29 at 7–13. In response to concerns expressed by the Court at the June 7 motion hearing, Pretrial Services later filed a Fourth Supplemental Report in which it provided additional information from the Eastern District of Washington about the House of Mercy and tools for monitoring Mr. Anders. Dkt. No. 30 at 2. Pretrial Services maintains its recommendation of release with conditions. *Id*. at 5–6.

## II.    LEGAL STANDARD

### A.    Standard of Review

A person who is ordered detained by a magistrate judge "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court reviews the detention order *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191–93 (9th Cir. 1990).

### B.    Presumption of Detention

Under the Bail Reform Act ("the Act"), 18 U.S.C. § 3141, *et seq*., where a court finds probable cause that a defendant has committed certain types of offenses, including "an offense involving a minor victim" under certain enumerated statutes, there is a presumption of detention. 18 U.S.C. § 3142(e)(3)(E). Although the Ninth Circuit has not ruled on the issue, almost every

Circuit has held that an indictment is sufficient to trigger the presumption. *See*, *e.g.*, *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996); *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991); *United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985); *cf. Kaley v. United States*, 571 U.S. 320, 328 (2014) (holding that a proper indictment "conclusively determines the existence of probable cause" (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975))).

However, the presumption is subject to rebuttal by a defendant. 18 U.S.C. § 3142(e)(3). To rebut the presumption, a defendant need only produce "some evidence" that there are conditions that would reasonably assure his appearance and community safety. *United States v. Rhule*, No. C20-0105, 2020 WL 5984072, at *3 (W.D. Wash. Oct. 8, 2020) (quoting *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810, 812–14 (1st Cir. 1990)); *see United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Although a defendant's burden of production 'is not heavy,' he must introduce at least some evidence." (quoting *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991))); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1985) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."). Although the presumption shifts the burden of production to the defendant, the burden of persuasion remains with the government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Finally, when a defendant rebuts the presumption, "the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).'" *Id.* (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

**C.    Detention Standard**

The Act requires that a court release a criminal defendant on personal recognizance or on an unsecured appearance bond before trial unless there is a determination that such release "will

not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). This default requirement is in accord with the principle that "[i]n our society, liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Ninth Circuit cautions that "[o]nly in rare cases should release be denied." *United States v. Santos–Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (*citing United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)). Further, "doubts regarding the propriety of release are to be resolved in favor of the defendant." *Id.* If a court determines that such release will not reasonably assure the defendant's appearance and the safety of the community, the court must impose "the least restrictive further condition, or combination of conditions," that will reasonably assure these goals. 18 U.S.C. § 3142(c)(1)(B). The Act only requires detention where a court finds that no such condition or combination or conditions can do so. 18 U.S.C. § 3142(e)(1).

If the Government moves for detention pursuant to 18 U.S.C. § 3142(f) and a defendant is eligible for a detention hearing, then the court must determine whether there are conditions of release that reasonably assure two goals: "the appearance of the defendant as required" and "the safety of any other person and the community." 18 U.S.C. § 3142(g). In making this determination, a court considers the following factors: (1) the nature and circumstances of the offense charged, including whether the offense involves a controlled substance; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id*.

1        To obtain pretrial detention, the government bears the burden of showing by a

2   preponderance of the evidence that there are no conditions that will reasonably assure the

3   defendant's appearance as required, and by clear and convincing evidence that there are no

4   conditions that will reasonably assure the safety of any other person and the community. *See* 18

5   U.S.C. § 3142(e)(1); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

6   **III.   DISCUSSION**

7        Mr. Anders argues that "the government has not demonstrated that he poses either an

8   unmanageable risk of flight or danger to the community." Dkt. No. 19 at 1. The Government

9   argues primarily that Mr. Anders cannot be safely supervised on release. Dkt. No. 21 at 1–2. To

10  make its determination, the Court first evaluates the presumption of detention, including whether

11  the presumption has been successfully rebutted, and then considers the factors enumerated in

12  18 U.S.C. § 3142(g).

13  **A.   Rebuttal of the Presumption of Detention**

14       Here, the presumption of detention is triggered because Mr. Anders is charged by

15  indictment with one count of Production of Child Pornography, 18 U.S.C. §§ 2251(a) and 2251(e).

16  *See* 18 U.S.C. § 3142(e)(3)(E); *Smith*, 79 F.3d at 1210. The magistrate judge found that "Mr.

17  Anders overcame the presumption [of detention] based on his strong community ties, stable

18  employment, and stable housing." Dkt. No. 15 at 1. The Court agrees that Mr. Anders has

19  overcome the presumption.

20  **1.   Risk of Nonappearance**

21       Mr. Anders has provided evidence to rebut the presumption as to the risk of

22  nonappearance. When informed of the indictment in this matter, Mr. Anders did not flee but

23

24

instead voluntarily surrendered himself and turned in his passport.[1] Dkt. No. 19 at 3. Although

Mr. Anders faces extremely serious charges in state court (Dkt. No. 7 at 4–6), he was released on

bond in December 2022, left the United States multiple times since that release, and returned

every time. Dkt. No. 19 at 8.

Mr. Anders also has strong family and community ties. He was born in Spokane,

Washington. Dkt. No. 7 at 2. He has lived in Washington State since 1984, except for four years

of college in California, and has lived in the Seattle area since 1992. Dkt. No. 7 at 2. His mother

and two stepbrothers live in Spokane. *Id*. Prior to this matter, Mr. Anders was employed at an

information technology firm and has worked for various corporations in technology sales since

1992. *Id*. at 3. Mr. Anders also co-owns a house and a condo in Seattle. *Id*.

Finally, the Government in its brief focuses almost exclusively on the safety of the

community. *See* Dkt. No. 21. The only facts raised by the Government that addresses

nonappearance are Mr. Anders's co-ownership of property in Colombia and the existence of two

pending state matters. Audiotape: Detention Hearing, Dkt. No. 13, at 5:43–6:05 (on file with the

Court) (the "Audiotape"); Dkt. No. 21 at 7. As noted above, Mr. Anders appears to have traveled

to Colombia while out on a serious state matter and still returned to the United States. Dkt.

No. 19 at 8. Further, the Court will order that Mr. Anders surrender his passport.

### 2.    Safety of the Community

While safety is the primary concern in this matter, Mr. Anders's burden of production is

fairly low, and he has provided "some evidence" to rebut the presumption as to safety. *Jessup*,

757 F.2d at 384. Mr. Anders is 53 years old and has no criminal history prior to the alleged

---

[1] Counsel states that the passport was "returned to the prosecutor pending hearing." Dkt. No. 19 at 3. At the motion hearing, counsel also stated that Mr. Anders's mother now has the passport, as Mr. Anders was detained and the passport was not ordered to be surrendered. Dkt. No. 28.

incidents in 2022 that gave rise to this matter and two pending state matters. Dkt. No. 7 at 4–6. He maintained steady employment prior to detention. *Id.* at 3. And he had been out on bond for his state case with little supervision since December 2022 with no substantive allegations of dangerous conduct. To be sure, the Government raised concerns about alleged incidents of prohibited conduct involving Christmas gifts for Mr. Anders's children, allegations that Mr. Anders was near his children's school, and the location of Mr. Anders's apartment. Audiotape, at 5:12–5:42; Dkt. No. 21 at 5–6. But Mr. Anders addressed these alleged incidents to the Court's satisfaction, (Audiotape, at 8:35–13:25; Dkt. No. 19 at 5–6), and the Court may impose further restrictions on the conditions of his release to safeguard any remaining concerns about community safety.

Therefore, the Court finds Mr. Anders rebuts the presumption as to both nonappearance and safety. However, the presumption remains as an evidentiary finding in favor of detention. *See Hir*, 517 F.3d at 1086. The Court now turns to the evidence relevant to factors listed in § 3142(g) and will weigh the presumption along with the factors.

**B.     The § 3142(g) Factors**

**1.     Nature and Seriousness of the Offenses Charged**

This factor instructs the court to examine the nature and circumstances of the offense charged and, in particular, whether the offense involves a minor victim. The seriousness of the offenses charged are demonstrated by the consequences for them: Mr. Anders faces a mandatory minimum sentence of 15 years of imprisonment if convicted of Count 1 and a potential term of imprisonment of up to 20 years if convicted of Count 2. *See* 18 U.S.C. §§ 2251(e), 2252(b)(2). The allegations, if true, are disturbing and inflict serious harm on some of our most vulnerable citizens: children. *See* Audiotape, at 2:45–4:15; Dkt. No. 21 at 2–3.

Therefore, the Court finds that the nature and seriousness of the offenses charged weighs in favor of detention.

### 2.      Weight of the Evidence

The Government describes the weight of the evidence in this case as "strong." Dkt. No. 21 at 7. To that end, the Government provides an excerpt of a Seattle Police Department "Case Investigation Report" that provides significant evidence as well as corroboration that Mr. Anders committed the crimes for which he has been indicted.[2] *See* Dkt. No. 21-1. That evidence includes video recordings recovered from Mr. Anders's personal electronic devices. Dkt. No. 21 at 7. Despite all the evidence the Government has and may ultimately bring to bear in this case, Mr. Anders is presumed innocent before trial, and nothing in the Court's analysis may be construed as modifying or limiting that presumption. 18 U.S.C. § 3142(j). Further, the Ninth Circuit has repeatedly declared that the weight of the evidence is the least important factor, and the statute neither requires nor permits a pretrial determination of guilt. *Gebro*, 948 F.2d at 1121; *see also Hir*, 517 F.3d at 1090; *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1408.

Therefore, while the Court finds that the weight of the evidence weighs in favor of detention, it treats this factor as the least important.

### 3.      The History and Characteristics of Mr. Anders

As discussed at the motion hearing, the Court has reservations regarding Mr. Anders's trustworthiness and credibility given the apparent exaggerations and/or misrepresentations made in his motion to the Court regarding his military service, his supervisory responsibilities at his former job, and the amount of the contributions he was making to the expenses for his family.

---

[2] The Government also provides a "Statement of Investigating Officer/Affidavit of Facts" that details serious allegations in a pending state matter involving his wife. *See* Dkt. No. 21-2.

*See* Dkt. No. 24 at 3–6 (reporting the results of Pretrial Services' investigation of these issues). These reservations persist despite counsel's explanations at the hearing. However, the Court acknowledges that Mr. Anders has no prior criminal history and has complied with conditions of release during the pendency of the state case against him. *See supra*, Section III.A.2. Mr. Anders also has strong community ties and a history of stable housing and employment. *See supra*, Section III.A.1. And he has no reported history of drug or alcohol abuse. Dkt. No. 7 at 4.

Therefore, the Court finds that the history and characteristics of Mr. Anders weighs narrowly in favor of release. However, Mr. Anders is cautioned that this decision was a very close one. The Court will not tolerate any further exaggerations or misrepresentations from either Mr. Anders or his counsel.

### 4.        Danger to Any Person or the Community

The Government devotes the bulk of its arguments to describing the charged offenses and highlighting the danger to the community posed by Mr. Anders's release. *See* Dkt. No. 21 at 1–2, 8. Although the Court shares the Government's concerns, the Court does not believe that detention is required to reasonably assure community safety. Notably, since Mr. Anders was approved to reside at the House of Mercy in Spokane, Pretrial Services has recommended that Mr. Anders be released with conditions. *See* Dkt. Nos. 27, 30. This residence avoids the dangers associated with other addresses that Pretrial Services previously considered and rejected. *See* Dkt. No. 12. The House of Mercy is approved by the Washington State Department of Corrections, and supervision officers are able to visit anytime. Dkt. No. 27 at 2. The program claims a record of low recidivism and is experienced with pretrial supervision. *See* Dkt. No. 29 at 8 (letter from program director). The program also includes a live-in house manager and has the capability to monitor internet usage as requested. *Id*. at 13 (letter from area manager). Further, the United States Probation Office in the Eastern District of Washington reports that there should

be no issues with location monitoring equipment at this address and that they should be able to

monitor Mr. Anders's computer usage. Dkt. No. 30 at 2.

In its supplemental brief, the Government imagines the ways that Mr. Anders *might*

circumvent supervision and computer monitoring, based on the examples of other defendants and

examples from other House of Mercy locations. *See* Dkt. No. 31. These claims are speculative

and could be applied to anyone facing the same charges. No set of release conditions is

foolproof. Further, the Act requires only "reasonable assurance," and not a "guarantee." *United*

*States v. Orta*, 760 F.2d 887, 891–92 (8th Cir. 1985); *see United States v. Djoko*, No. C19-0146,

2019 WL 4849537, at *5 (W.D. Wash. Oct. 1, 2019) ("While these conditions [of release] cannot

guarantee [defendant's] appearance, the standard under § 3142(g) is reasonable assurance.");

*United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (noting that "Section 3142 does

not seek ironclad guarantees"). The Court is satisfied that location monitoring with home

detention, in addition to the numerous other conditions recommended by Pretrial Services, will

reasonably assure both Mr. Anders's appearance and community safety.

Therefore, the Court finds that consideration of danger to any person or the community

weighs narrowly in favor of release.

For the reasons explained above, the Court finds that the Government has not met its

burden by a preponderance of the evidence that there is no combination of conditions of release

that will reasonably assure Mr. Anders's appearance.

The Court also finds that the Government has not met its burden by clear and convincing

evidence that there is no combination of conditions of release that will reasonably assure the

safety of any other person and the community.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## IV.   CONCLUSION

Accordingly, Mr. Anders' Motion to Revoke the Detention Order (Dkt. No. 19) is GRANTED and the Detention Order (Dkt. No. 15) is REVOKED. The Court concludes that the conditions recommended by Pretrial Services along with the additional conditions proposed by Mr. Anders regarding computer use will reasonably assure his appearance and the safety of any other person and the community.

Therefore, the Court REFERS the Motion to the Magistrate Judge on duty for the purpose of releasing Mr. Anders and issuing an appearance bond that shall include the following:

(1)     The conditions recommended in the Fourth Supplemental Pretrial Report of the Western District of Washington (Dkt. No. 30 at 5–6).

(2)     Mr. Anders will only be allowed to use a computer for employment purposes or for communicating with legal counsel or medical or mental health providers. Any computer must be approved by Pretrial Services. Covenant Eyes shall be installed on any computer Mr. Anders uses and shall be linked to his Pretrial Services supervising officer.

(3)     Mr. Anders shall be released to the House of Mercy in Spokane and shall maintain residence there while this matter is pending.

(4)     Any other conditions the Magistrate Judge or Pretrial Services for the Western District of Washington deem appropriate.

Dated this 15th day of June 2023.

Tana Lin
United States District Judge